Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is No. 24-1767, United States v. Victor Miguel Duluc-Mendez. At this time, would counsel for the appellant please introduce himself on the record to begin? Counsel, before you start, I just want to welcome Judge Elliott, who is sitting with us for the first time today, from New Hampshire. May it please the Court, my name is Robert Fitzgerald, I represent the appellant Victor Duluc-Mendez. With the Court's permission, I'd like to reserve two minutes for the rebuttal. You may. Victor Duluc's mother, Basilia Mendez, accompanied him when he turned himself into authorities in the underlying criminal case. She provided him the support and encouragement he needed to do the right thing. Eleven years later, the District Court had the opportunity to do the right thing for Basilia Mendez and grant Mr. Duluc's motion for compassionate release so that he could provide her the care that she desperately needs. Instead, the District Court denied the motion in a rushed order that committed legal error and relied on clearly erroneous factual findings. This Court should vacate the order and either grant the motion outright or remand to the District Court. I'd like to address the three issues raised in the brief and the order presented. First, the District Court committed legal error by failing to consider Mr. Duluc's rehabilitation in combination with other circumstances in support of an extraordinary and compelling reason. Counsel, on that first argument that you made, I just want to make sure I understand exactly what you're arguing. Are you saying that under the guidelines, his rehabilitation plus the care needed by his mother could be extraordinary and compelling even if he were not the only available caregiver? Is that one of the arguments that you're making? That's correct, Your Honor. Without conceding the availability, the family circumstances that Mr. Duluc's family is facing coupled with his profound rehabilitation in combination, which the 2023 guideline directs the District Court to consider, does rise to an extraordinary and compelling reason. The District Court did not address rehabilitation here, which leads to the inescapable inference that the Court did not consider it as it was supposed to do. So that's a separate argument from your argument that it was clearly erroneous to conclude that the other siblings were available to care for the mother? Yes, Your Honor. That's our second argument in the brief, and I would be turning to that here just momentarily. Just one more question. Did you make the first argument to the District Court? Yes, Your Honor. This was a preserved claim. Mr. Duluc presented his family circumstances as claim kind of Roman numeral I on equal footing. Roman numeral II in the motion identifies rehabilitation. At the conclusion of- Was it explained that, Judge, what might be a requirement under the first argument, which is actual unavailability, is lessened by his rehabilitation? Is that how it was framed up for the District Court, or just give him compassionate release because of his great rehabilitative efforts? If the Court looks at the motion at sealed appendix 51, it will see that Mr. Duluc identifies rehabilitation at the conclusion of his argument with respect to family circumstances, saying that that, in addition, constitutes an extraordinary- How do you think that argument works? So it's sort of a sliding scale? You know, my mother, I have great rehabilitation, and let's say my mother is sick, but it's not sort of a terminal sickness. Then maybe I can get it because my rehabilitation is so great, even though the illness isn't that great? Is it sort of a sliding scale? It would be on a case-by-case determination, but yes, Your Honor, it would be a totality of the circumstances, looking at the family circumstances, and in this case, it involves Mr. Duluc's mother, who has serious cognitive decline, physical ailments, and his profound rehabilitation that went uncontested as far as the nature of that personal transformation in the district court. The struggle I have with this, so I actually agree with you, like the rehabilitation point is not discussed in the judge's order, but what is discussed is 3553A. I understand it's in one sentence, however, I don't really think he was only referring to the two misdemeanors, given the serious crime that your defendant not only was charged with, but was convicted of in serving the sentence for, and the judge does cite 3553A after that sentence. And so even if everything you've told me to this point is true, if the judge decided that this is too serious of a crime, you agree he can deny compassionate release, right? I think that after weighing all of the 3553A factors, a judge can come to that determination, but here we have no assurance that the judge did, in fact, consider all of the factors under 3553A, as it was obligated to do, for five reasons. First, Mr. DeLuke presented robust argument about the 3553A, giving argument to each of the relevant factors. That cuts against you, because that means Judge Bessosa heard all of that and then said seriousness of the offense, I mean, he didn't use those words, but when he says, look at this crime, I feel like that's what he's telling us, and he heard everything that was said, so we definitely have cases that say we can assume he heard everything, and this is what he thought mattered. Well, in those cases, Your Honor, typically what you have is argument from the government in contrast, and you have that. That's completely lacking here, so that would be the second reason that you can't make that inference on this record. It was a rushed order. This order came the day after the government filed its opposition. It was a single-sentence disposition. In criminal record, whether it's the two misdemeanors or involves the offense conduct, and we did cite cases in the brief which stand for the proposition that when this district court wants to identify offense conduct, it's explicit about that, but criminal record is not a dispositive factor like a finding of future dangerousness. Future dangerousness would preclude somebody generally from receiving that kind of time-served sentence reduction, but we didn't have that finding here. But even if it's not dispositive, counsel, and I understand all of your arguments that it was a very short order. It's one sentence, and that more explanation could have been helpful here, but even though it's not dispositive, if the district court decided to weigh this current criminal conviction which resulted in somebody's death following a carjacking extremely heavily under 3553, it was allowed to do that. It could exercise its discretion in that fashion, couldn't it? It could exercise its discretion in the weighing, but it must consider and demonstrate that it considered the arguments of Mr. DeLuke, and that's where it failed to do that. And we know that from the United States Supreme Court's Concepcion case that the district court has an obligation to demonstrate its reasoning, and that was in the sentence reduction context. The factors that Mr. DeLuke had presented that warranted some discussion included his rehabilitation, letters from Bureau of Prison staff and officers attesting to his performance in prison. This is something that goes above and beyond typical rehabilitation. These are the individuals who know Mr. DeLuke and interact with him on a day-to-day basis ten years after his sentencing. That should have warranted some discussion from the district court, but we have nothing on that. So is your position that just reference to the statute, to 3553A, is insufficient to demonstrate consideration of the factors? Yes, Your Honor. That would be part of it. I mean, it would be an incredible case in which just a simple citation to the statute would be sufficient to demonstrate the court's consideration of those, especially absent argument from the government on those points. We have no basis on the papers submitted to the court, and that's an important point. This was submitted on the papers. There was no opportunity for the parties to discuss this and have that in front of the court like a typical sentencing hearing. But even if the court finds that one factor alone predominates and decides the entire case? It would have to explain why that factor goes against Mr. DeLuke's rehabilitation, why that factor goes against the fact that Mr. DeLuke is no longer a danger to the community, why that factor weighs against the ten-plus years that he had served in incarceration that weighed in favor of the penological goals of 3553A. I see in my last few seconds here, I did want to note that the district court's finding that Mr. DeLuke's siblings were available caregivers was clearly erroneous. More than 1,000 miles of ocean separate Vasilia Mendez from her adult children. Their work schedules, health conditions, and housing restrictions preclude them from being available caregivers. The district court's determination— Is that a discretionary view? I mean, how do we review that? Because it seems to me you can say all those things, and the district court can say it's not optimal that she move to Florida, but it's possible. And they say it's too far, there are housing restrictions, but the judge think, well, again, not optimal. If that's what the judge thought, how do we deal with that on a review? A possibility, the inverse of that would be that it's not impossible, and that's not the standard. The standard does not require a defendant to show that it would be impossible for another individual to provide that care, but that the defendant is the only available caregiver. And on this record, what you have before you are letters from the adult children stating that they are not capable of providing the constant supervision that Vasilia Mendez requires as her doctors have prescribed and determined, and that should be sufficient on this record to make that determination. Mr. DeLuke is the only available caregiver for his mother. Counsel, I know you cited a number of cases in your brief about courts trying to understand how to interpret the term availability. What does it mean? Going to Judge Afram's question. Are there any additional cases that have been decided since you filed your brief? Any circuit court cases that have interpreted what available means under the guidelines? I have not come across any circuit authority on that point. I would just direct the court to those district court orders, because that's where much of this is being determined and played out, and each one of those suggests that distance is a weighty factor in determining the availability of another adult sibling. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce herself on the record to begin? Good morning, Your Honors. May I please the Court? Emelina Grahit on behalf of the United States. Let me first begin with responding to the appellant's argument. The record reflects that the district court did consider rehabilitation as part of its analysis. In fact, the record reflects that in its order, it considered a totality of the U.S. Sentencing Guidelines Section 1B1.13. It cited the whole section instead of a subsection, because specifically, if we were talking in terms of the available caregiver analysis, it would be B3. The catch-all provision was also considered, but it was not raised by the appellant in the district court. Therefore, it was waived. The district court specifically considered and cited the whole section because it took into consideration the entire scope and the motions of the parties and reasonably made its determination. So it is reasonable to infer that such analysis was made. Counsel, how can we infer that, though? Because the district court never uses the word rehabilitation. The government didn't include a section on rehabilitation. It's a very short brief that it submitted to the court, and Mr. DeLuke included quite a bit of argument about his rehabilitation in a number of exhibits, and none of that was cited. So I'm just not sure that it's fair to infer on that record that the district court considered rehabilitation. Do you have any cases from us to support that we can draw the inference in that situation? So, Your Honor, basing ourselves on the record, the government, in its response, did argue rehabilitation, and the court... Where in the government's response can you point us to a specific page that you addressed rehabilitation? In the appendix 32, Your Honor. And what did the government say on rehabilitation specifically at appendix 32? It indicated what the position is here, Your Honor, that rehabilitation by itself, although we do recognize that the appellant has had commendable rehabilitation efforts, the government did indicate that it was not enough by itself. And in this particular case, extraordinary and compelling circumstances, as it was ruled upon by the court, it was not established. The district court did not err, and much less clearly err, when it determined that he had to demonstrate that he was the only available caregiver, because... Your argument's not their argument. I mean, your argument just says cohorts have held that rehabilitation does not warrant compassionate release. That's not their argument. No, their argument... Their argument is it reduces the amount of family distress or, you know, need that's otherwise required. That's their argument. Yes, Your Honor, but the position, the record and the district court's ruling is based on the main reason that it was that Duluk had not demonstrated an extraordinary and compelling reason to warrant release based on the available caregiver. Okay. So I agree. Judge Bessos' reason, aside from 3553A, was the fact that there was no family member that's unavailable. Yes. Their response is, because of the rehabilitation, that showing does not have to be made to the same degree it otherwise would have had to absent the rehabilitation. That is their argument. First of all, do you agree with their argument that less availability, a lesser showing of availability can be sufficient if there's a greater amount of rehabilitation? Do you agree with that? No. So our position is that rehabilitation as a combination to an extraordinary and compelling reason, which here it would be the family circumstance, could become an extraordinary and compelling reason to warrant the compassionate release remedy. That must mean that there's something about the family circumstance without the rehabilitation that's not extraordinary and compelling. Exactly, Your Honor. Exactly. Okay. So if that's the case, rehabilitation can make up for an absence of something that by itself would be sufficient, which here is availability. Availability, not so clear. Rehabilitation, really high, so you meet it. That's what I understand your friend to say the law is. Yes. But it is our position that that is not the case, that rehabilitations, although they were commendable, they were not enough because once the court made its determination based on the extraordinary and compelling reason, rehabilitation by itself does not survive. Counsel, I think that's exactly what your friend on the other side is saying is the legal error. That's not our case law. Under our case law, rehabilitation plus something else can amount to an extraordinary and compelling reason. In other words, you're saying that unless you have an extraordinary and compelling reason, rehabilitation can't help you. But that's not the argument. The argument is that under our case law, the court is supposed to look at the constellation of factors, one of which can be rehabilitation, and together that can amount to an extraordinary and compelling reason. And that's what I didn't see you addressing to the district court below. You just made the argument that rehabilitation alone is not enough. But that's never been Mr. DeLuke's position. So again, I'm just wondering, how can we infer from the short order here that the district court actually considered rehabilitation when it doesn't talk about it and your position was simply that rehabilitation alone is not enough? Your Honors, based on the record, the government did respond to DeLuke's arguments, particularly as to the extraordinary and compelling reasons and to the rehabilitation, and it indicated that individually as a whole, it failed. It failed to establish the extraordinary and compelling reason. Okay, but do you agree, besides citing 1B, the 1B guideline, all Judge Bezos has said, aside from 3553A, is it has not been established that these people are unavailable. Yes, Your Honor. Yes, Your Honor. That is what the order says. What we're indicating is that when the ruling was made, Judge Bezosa included the entire 1B1.13 section instead of including only the B3 or the catch-all provision that was not raised by the appellant in the district court. That means one of two things. One, he was trying to tell us something by that, or he just decided to cite the broader provision and didn't go down to the granular level of which section he's relying on. That's very hard to parse. Yes. I think it can be reasonably inferred that the district court gave a lot of weight to the available caregiver analysis, but the most weight that he gave was to the 3553A factors, because even if an extraordinary and compelling reason was raised, including commendable rehabilitation, the district court did not abuse his discretion, meaning that independent analysis, and in this particular case, Your Honors, he made the ruling on 3553A to a sponte. The government did not raise it in its response, because in this particular case, we're talking about a carjacking resulting in death offense, in which Duluk and other people took a Toyota Camry from an innocent individual, Duluk withdrew $150 from an ATM machine, took the individual to a rural area, and he was killed. My question is, there seems to be a lot of reasons one might make 3553A arguments and the government did not. Why not? Your Honor, the government did not raise the 3553A factors, but I think it gives a lot of weight to the district court's order. My question is, why not? Because at the end of the day, the government, in the end of its motion, indicated that individually as a whole, the motion failed, Your Honor. But in the end, the district court did find sufficiently important to consider the 3553A factors and not only two misdemeanors that escalated from illegal appropriation, possession of a firearm, and then carjacking resulting in death. And it included the 3553A provision, and it included that the criminal record weighs against release. And the district court can make that independent basis based on 3553A, and this court has affirmed cases in which this has happened, such as U.S. v. Ayala-Vasquez, which is 96, Federal 4th, 1, 2024, and U.S. v. Vega-Figueroa, which is 139, Federal 4th, 77 of the year 2025. Do you think rehabilitation is a 3553A consideration? It can be a 3553A consideration, but... You agree that there was evidence in this record of rehabilitation? Yes, Your Honor. It was commendable, the rehabilitation by Mr. DeLuke. We will not deny that. Do you agree that your friend pointed out rehabilitation in its brief to Judge Bezosa? Yes, yes, Your Honor. Do you agree that his analysis of 3553A doesn't touch upon that at all? It does cite the provision, the position... But he doesn't discuss, he literally just says, the record, C3553A. Yes, it relies on the most important part from the district court's perspective, which was the criminal record of this defendant and the particular nature of this violent offender. Now we see him not addressing rehabilitation twice, so he doesn't address it as it's directed towards the extraordinary circumstances piece, and he's not addressing it explicitly during 3553A. One way to view this is, he just did not consider the best point for Mr. DeLuke, which is what happened to him, which is positive, while he's been incarcerated. And shouldn't he have considered that somewhere? It was considered by the district court because the district court, it is reasonably inferred that the district court considered the totality of the motions that were filed by the parties, and the motion that was filed by the appellant included the rehabilitation, and it was extensively discussed in that motion, and it was responded by the government. But at the end of the day, based on the totality of the parties' motions, and based on the fact that the district court's response, they considered that the criminal record weighs against release, it was utmost important to make that independent basis when denying the compassionate release request. By that reasoning, though, how could an appellant ever demonstrate that a judge has failed to consider an argument? I mean, what you're saying is the appellant made an argument, and therefore the judge considered it. So how are we supposed to determine whether the judge actually considered the argument? Because if the judge doesn't mention the argument... And I would add on to that before you answer, especially when there was no hearing. So we have nothing to look at other than some papers that either he read or he didn't read. We have no way to know. Yes. But the order, the order is clear that no extraordinary and compelling reasons were presented by Mr. Duluc. It went into the fact that he was not the only available caregiver, and that the reasons provided by the siblings were not convincing. It did cite U.S. Sentencing Guideline 1B1.13 in its entirety, instead of only relying on B3, even when it was discussing the B3 portion in its order. The district court focused on the main reason, which was the fact that the available caregiver analysis fails. And then it cited 3553A and gave specific weight to the criminal record of this defendant because of the violent nature of the offense he committed. The district court found that the dangerousness was still there. It was the most important part of its analysis, and it was a sua sponte consideration made by the district court, which suffices by itself. Counsel, just one more question. In terms of the availability issue, I noticed you cited a number of cases in your brief, but I don't believe any of those cases dealt with similar facts where the other family members lived a thousand miles away or across an ocean or a great distance. Do you have any cases where those facts were found to still be insufficient to show unavailability? Well, the government would rely, as stated by the appellant, in district court cases. If the court needs supplemental cases, we could be able to provide them. No, I'm sorry, my question is a little different. Are any of the cases that you cited in your brief cases that involve facts where the other family members lived a thousand miles away or across an ocean? I believe that there are cases that we cited that do include that they don't live in the same location. But I don't mean like 15 miles away, I mean a great distance. Can you tell me which particular case? Specifically, living in the United States? No, Your Honor. However, the record reflects that it is more an inconvenience than it is an unavailability, and the reason behind it is because the reasons that were provided by Mr. Duluc's siblings were not sufficient. Xiomara Duluc lives in Buffalo, and she just stated that she had work and space constraints. Juan Antonio Vicioso indicated he lives in Florida and his apartment is too small. And Veronica Cristina Encarnacion indicated that she lives in Florida, she receives medical treatment, but she lives in a rental home, and her mother is more accustomed to life in Puerto Rico. It is an inconvenience because, yes, for Ms. Vasilia Mendez it can be an inconvenience to move to the mainland, and it is an inconvenience for all individuals that have to deal with elderly family members that suffer from illnesses. However, it is insufficient because there is no mention of setting up a support network such as hiring a nurse or placing her in a senior facility or even moving her to the United States. It just simply states that she is more accustomed to life in Puerto Rico, that the only person that can take care of her is Mr. Duluc Mendez. But in fact, it just demonstrates the inconvenience for his siblings to take care of their mother. But at the end of the day, the responsibility to take care of an elderly family member, such as a mother, relies on all siblings. It doesn't only rely on Duluc Mendez. And that is why the record is clear that the available caregiver analysis fails. Thank you, counsel. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record to begin? He has a two-minute rebuttal. May it please the Court. Robert Fitzgerald. A couple points, Your Honor. One, Your Honors, I heard Sister Counsel reference waiver. There's been no discussion of waiver in the briefs. I'm afraid I didn't catch what her point was with respect to that, but there's been no – nothing's been waived in this case. Two, under the government's reading of availability, any defendant with siblings is exempted from an extraordinary and compelling reason. That cannot be the standard. Two, I'd like to point the Court to Texera Nieves, in which this Court acknowledged that an order like the bare-bones order at issue in this case could be inadequate in some cases. This is that case, and distinguishing the facts of that case from this really bears that out. In Texera Nieves, the Court explicitly adopted the arguments of the government. It couldn't do that here. There were no arguments raised for 3553A. There was a finding of danger to the community in Texera Nieves. There was no such finding here to the point that the government contends the Court implicitly made that. I note that this District Court has had four cases, at least, before this Court in which it has explicitly found future dangerousness. It knows how to be explicit when it makes that finding – Texera Nieves, Ayala Vazquez, Miranda Rojas, Cruz Quilan. Each of those cases, the District Court expressly found the defendant to be a future dangerousness, a continuing danger to the community. Finally, in Texera Nieves, where this Court did affirm, there was a very short time between the sentencing proceeding and the compassionate release motion. The sentencing proceeding in that case happened in 2019. The compassionate release motion was filed a year later in 2020. This Court found persuasive that the District Court had before it all of the 3553A factors just a year earlier, and not much had changed. Here, much changed in those 10 years that Mr. DeLuke – 11 years that Mr. DeLuke had been incarcerated. His personal characteristics had changed, as demonstrated by his rehabilitation letters and, if I might finish this one thought, Your Honor, the penalogical goals had been satisfied through that time incarcerated. His family circumstances had changed greatly in those 10 years, which was certainly something the District Court was permitted to consider, and for that reason, Your Honor, I would note that this case fails to demonstrate that the District Court properly considered the 3553A factors. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.